**EMPLOYERS MUTUAL CASUALTY COMPANY, Appellant,**

v.

**CITY OF MARION, Iowa, et al., Appellees.**

No. 96–1961.

Supreme Court of Iowa.

April 22, 1998.

Steven E. Ort of Bell, Hansen & Ort, P.C., New London, for appellant.

William H. Roemerman and Robert J. O'Shea of Crawford, Sullivan, Read, Roemerman & Brady, P.C., Cedar Rapids, for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

Employers Mutual Casualty Co. brought this declaratory judgment action to determine its liability on a public improvement bond. *See* Iowa Code § 573.2 (1995). The defendants are the City of Marion and subcontractors who filed claims after the city canceled its contract with a contractor who had agreed to construct a public improvement for the city. Employers Mutual sought a ruling that the subcontractors had not filed

their claims in a timely manner to preserve their rights against the bond. The district court sustained the subcontractors' motion for summary judgment, concluding the subcontractors had filed their claims in a timely manner. We agree the subcontractors filed their claims in a timely manner but for different reasons. We affirm.

## I. *Facts.*

On February 2, 1995, the city of Marion contracted with Midwest Excavating, Inc. for the construction of the 1995 Indian Creek Sanitary Sewer Project. Pursuant to this contract, Employers Mutual Casualty Co. issued an Iowa Code chapter 573 bond for the project. The bond was for 100% of the contract price.

On June 29 the city declared Midwest in default and canceled the contract. On the same day, the city demanded that Employers Mutual complete performance of the contract pursuant to the bond. The city and Employers Mutual agreed that Employers Mutual would be responsible for completing the project.

Several subcontractors thereafter filed claims seeking payment for materials and labor in connection with the project. As of September 5, 1996, the city had not finally accepted the improvement and continued to withhold the statutory percentage from the defaulting contractor. *See* Iowa Code § 573.12(1) (requiring public corporation to withhold five percent of monthly payment to contractor).

## II. *Proceedings.*

On December 13, 1995, Employers Mutual brought this declaratory judgment action seeking a ruling that it was not liable on the bond for the payment of any of the subcontractors' claims. Employers Mutual alleged, among other things, that the subcontractors did not file their claims in a timely manner as Iowa Code section 573.23 required them to do and that the Iowa Code section 573.16 statute of limitations barred their claims.

Section 573.23 provides that where the contractor abandons work on a public improvement or is legally excluded from the work, the improvement is deemed completed for the purpose of filing claims from the contract cancellation date. Section 573.16 requires subcontractors to bring suit on their filed claims not later than sixty days after completion and final acceptance of the improvement.

Several of the subcontractors moved for summary judgment. They argued that section 573.23 did not trigger the statute of limitations for filing claims in section 573.16. Rather, they argued, Iowa Code section 573.10(1) triggered the time limitation in section 573.16. Section 573.10(1) requires claims to be filed at any time before the expiration of thirty days immediately following the completion and final acceptance of the improvement. The subcontractors argued that because the city had not accepted the improvement before they filed their claims, their claims were timely.

The subcontractors also argued that even if the court accepted Employers Mutual's position, the claims were still valid under Iowa Code section 573.10(2). This section provides that claims may be filed at any time *after* the expiration of thirty days following final completion and final acceptance of the improvement *and* no action is pending to adjudicate rights in and to the unpaid portion of the contract price. The subcontractors argued that when they filed their claims the city had not yet released a percentage of the full contract price for the project and no actions were pending to adjudicate rights to the unreleased percentage.

District Judge Thomas L. Koehler sustained the motion for summary judgment. The court reasoned that had the city canceled the project entirely, the subcontractors "would have immediate notice to file a claim and there would have been a 'final acceptance' of the project." However, because Employers Mutual had undertaken to complete the project, the court reasoned further that there was no abandonment of the improvement.

In these circumstances, the court concluded, the section 573.16 statute of limitations could not commence until after completion and final acceptance of the project. Because the city had not formally accepted the pro-

ject, the court concluded the subcontractors had filed their claims in a timely manner.

Employers Mutual appealed from this ruling. Later, several other subcontractors filed motions for summary judgment. District Judge Lynne E. Brady sustained these motions on the same grounds Judge Koehler had sustained the first round of motions. Employers Mutual also appealed from this ruling. We later consolidated the appeals.

On appeal, Employers Mutual contends the district court erred when it concluded the claims were filed in a timely manner and in support of its contention stands on the allegations in its petition.

### III. Scope of Review.

Our review of summary judgment rulings is for correction of errors at law. *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 354 (Iowa 1995); Iowa R.App. P. 4. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c).

### IV. Timeliness in Filing Claims and Bringing Suit.

▆ Whether the subcontractors filed their claims and brought them in a timely manner depends on the interpretation and interplay of three statutory provisions. Iowa Code section 573.10(1) provides the time limitations for subcontractors to file claims involving public improvements. This provision provides:

Claims may be filed with [officers authorized by law to let contracts for public improvements] as follows:

1. At any time before the expiration of thirty days immediately *following the completion and final acceptance* of the improvement.

Iowa Code § 573.10(1) (emphasis added).

Iowa Code section 573.16 is the statute of limitations for filing suit on the claims and it provides in relevant part:

The public corporation, the principal contractor, *any claimant for labor or material who has filed a claim*, or surety on any bond given for the performance of the

contract, may, at any time after the expiration of thirty days, and *not later than sixty days, following the completion and final acceptance of said improvement*, bring action in equity in the county where the improvement is located to adjudicate all rights to said fund, or to enforce liability on said bond.

(Emphasis added.)

At a minimum, subcontractors must file claims within thirty days of completion and final acceptance of the improvement. To judicially enforce their claims, subcontractors must file suit no sooner than thirty days and no later than sixty days following completion and final acceptance of the improvement.

Iowa Code section 573.23 comes into the picture if the contractor abandons the work or is legally excluded from it:

When a contractor abandons the work on a public improvement or is legally excluded therefrom, *the improvement shall be deemed completed for the purposes of filing claims as herein provided, from the date of the official cancellation of the contract.* The only fund available for the payment of the claims of persons for labor performed or material furnished shall be the amount then due the contractor, if any, and if said amount be insufficient to satisfy said claims, the claimants shall have a right of action on the bond given for the performance of the contract.

(Emphasis added.)

Employers Mutual contends that pursuant to section 573.23 the section 573.10(1) time limitations for filing claims and the section 573.16 time limitations for filing suit on the claims begin to run from the day the contractor abandons the work or the public corporation cancels the contract.

In support of its contention, Employers Mutual makes the following argument. Sections 573.10(1) and 573.16 are general statutes that presuppose completion and final acceptance of the improvement pursuant to the contract for which the bond was given. In contrast, section 573.23 is a special statute that deals with those circumstances in which the public improvement contract has been

officially canceled. The legislature has clearly provided that the date of cancellation is deemed to be the date of completion of the public improvement for purposes of filing claims and filing suit on the claims. If there is a conflict between sections 573.10 and 573.16 on the one hand and section 573.23 on the other, section 573.23 prevails as an exception to the general statutes. *See* Iowa Code § 4.7.

The subcontractors have a different view of section 573.23. They think this provision makes clear that the public corporation is only required to pay the retained percentage which exists on the day of the default (not the unearned or unpaid portion of the contract price) before looking to the bonding company for payment of claims. They point out that this court has so interpreted section 573.23 in *Sinclair Refining Co. v. Burch*, 235 Iowa 594, 600, 16 N.W.2d 359, 362–63 (1944). Thus, the subcontractors see no conflict between sections 573.10 and 573.16 on the one hand and section 573.23 on the other. They think sections 573.10(1) and 573.16 govern when claims are to be filed and when suits are to be brought on the claims and section 573.23 governs who is to pay the claims.

Contrary to the subcontractors' contention, section 573.23 deals not only with who is to pay the claims but it also clearly deals with when claims are to be filed in the event the contractor defaults or is legally excluded from the work on the improvement. *Sinclair* dealt only with the former and not the latter issue. When statutes are ambiguous, we resort to rules of statutory construction to arrive at legislative intent. Iowa Code § 4.6. One such rule requires that we give effect to all of the language in the statute. *See Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 765 (Iowa 1981) (holding statute should not be construed to make any part of it superfluous).

When the legislature used the language "the improvement shall be deemed completed for the purposes of filing claims *as herein provided*" in section 573.23, we think the legislature meant that language to have some meaning. By that language, we think the legislature intended to trigger the deadlines for filing claims as provided in section 573.10(1). We therefore hold that once there has been a cancellation of the contract, as here, the section 573.10 time limitations for filing claims start to run from the cancellation date. (We interpret the words "legally excluded therefrom" in section 573.23 to include here the city's cancellation of the contract.)

As Employers Mutual points out, there are practical reasons supporting the legislature's decision to fix a different date for filing claims in circumstances where the contractor defaults or the city cancels the contract. Both the public corporation and bonding company need to know how much money is available on the contract and the bond to undertake the completion of the improvement. This determination becomes certain when the default or contract cancellation date is the date marking the beginning of the section 573.10 thirty day time limit for filing claims. Without such certainty, claimants could assert claims months after the public corporation and the bonding company had committed funds to complete the improvement. In these circumstances bonding companies would be hesitant to undertake completion of an improvement. They would insist that the public corporation "accept" the improvement to start the thirty day time limit for filing claims.

We recognize that our interpretation brings section 573.23 into conflict with section 573.10(1). Like Employers Mutual, we look upon section 573.23 as a special statute because it deals with a special situation—a contractor's default or a public corporation's cancellation of the contract. Because it is a special statute, section 573.23 controls as an exception to section 573.10(1), the general statute for filing claims in all other situations. *See* Iowa Code § 4.7 (providing that when there is an irreconcilable conflict between a general statute and a special statute, the special statute prevails as an exception to the general statute).

All but two of the claims were filed more than thirty days after the city canceled the contract. Unless some other provision of chapter 573 saves these late-filed claims, they are time-barred as a matter of law. On this point, the subcontractors have a fall-back position based on Iowa Code section

573.10(2). They asserted their fall-back position in the district court and they assert it here. The district court did not consider the fall-back position because it disposed of the case based on its interpretation of sections 573.10(1) and 573.16.

### V. *Iowa Code Section 573.10(2).*

■ Iowa Code section 573.10(2) provides: Claims may be filed with [officers authorized by law to let contracts for public improvements] as follows:

. . . .

2. At any time after said thirty day period [following completion and final acceptance of the improvement], if the public corporation has not paid the full contract price herein authorized, and no action is pending to adjudicate rights in and to the unpaid portion of the contract price.

The subcontractors think their claims meet the requirements of section 573.10(2). We agree.

When the city canceled the contract on June 29, 1995, the project was deemed completed on that date for purposes of filing claims. Iowa Code § 573.23. The project, however, was *not* deemed completed for purposes of filing suit on the claims pursuant to section 573.16. We agree with the subcontractors that the language of section 573.23 has no effect on section 573.16 because 573.23 deals only with filing claims and says nothing about suing on claims.

■ · In *Cities Service Oil Co. v. Longerbone*, 232 Iowa 850, 6 N.W.2d 325 (1942), this court determined the fate of late-filed claims pursuant to a statute that followed verbatim the language of section 573.10(1) and (2). The court adopted a "piggybacking" rule as to the late-filed claims. The rule is that if any claimant has filed a claim within the thirty day period, other claimants may file claims after the thirty-day period as long as the other conditions in section 573.10(2) are met. The conditions are that (1) the public corporation has not paid the full contract price and (2) no action is pending to adjudicate rights to the contract price. *Northwest Limestone Co. v. State Dep't of Transp.*, 499 N.W.2d 8, 11 (Iowa 1993); *Iowa Supply Co. v. Grooms & Co. Constr., Inc.*, 428 N.W.2d 662, 667 (Iowa 1988); *Lumberman's Whole-sale Co. v. Ohio Farmers Ins. Co.*, 402 N.W.2d 413, 415 (Iowa 1987); *Cities Service*, 232 Iowa at 858–59, 6 N.W.2d at 328–29. These claimants may have their late-filed claims adjudicated against the retained percentage and in turn against the bond:

> When claims were filed herein within the 30–day period [following completion and acceptance], the highway commission was required to retain "not less than double the total amount of all claims filed." [Section 10312, Code, 1939 now Iowa Code section 573.14] To that extent there was clearly a statutory retained percentage. If, before these actions were brought, further claims had been filed after such 30–day period, they would be timely under paragraph 2 of Section 10308 [now Iowa Code section 573.10(2) ] . . . but could be filed with leave of court under section 10309 [now Iowa Code section 573.11].
>
> We agree with the trial court that the funds retained by the highway commission constituted statutory retained percentages herein, which, subject to the priorities fixed by section 10315 [now Iowa Code section 573.18], were available for the payment of claims filed with the court pursuant to section 10309, and, if such funds were insufficient, recovery might be had upon the bond.

*Cities Service,* 232 Iowa at 858–59, 6 N.W.2d at 329.

The record indicates that one subcontractor filed a claim on July 14, 1995, and another on July 24, 1995. Both fell within thirty days after the city canceled the contract. Employers Mutual subsequently paid one of those claims. In addition, at the time Employers Mutual filed this suit on December 13, 1995, the city held some of the unearned portion of the contract price as well as some of the statutory retained percentage. *See* Iowa Code § 573.12(1) (requiring public corporation to retain from each monthly payment to the contractor not more than five percent of the amount due). The present suit is one "to adjudicate rights in and to the unpaid portion of the contract price" pursuant to section 573.10(2).

Under the *Cities Service* analysis, when the two subcontractors filed their claims in a timely manner pursuant to section 573.10(1), the city was required to retain a sum equal

to double the amount of these claims. Iowa Code § 573.14. To that extent there was a statutory retained percentage. Because two of the claims were filed in a timely manner pursuant to section 573.10(1), the remaining claims are also considered filed in a timely manner *if* they were filed before Employers Mutual filed this suit. *Id.* § 573.10(2). All but one of these remaining claims were filed before Employers Mutual filed this suit. Those claims filed before this suit are considered filed in a timely manner. The lone exception was filed two weeks after this suit. Employers Mutual does not contend that the claim filed after this suit was improperly filed. *See id.* § 573.11 (district court has discretion to permit claims to be filed with it during the pendency of the action). We conclude it too was filed in a timely manner.

### VI. *Whether Iowa Code Section 573.16 Barred the Claims.*

■ Notwithstanding our conclusion that the subcontractors filed their claims in a timely manner pursuant to section 573.10(2), Employers Mutual contends section 573.16 barred the claims. In support of its contention, Employers Mutual argues that section 573.23 ties "completion and acceptance" for purposes of filing claims and suing on the claims to cancellation of the contract. "Completion and acceptance" are deemed to occur on the contract cancellation date, says Employers Mutual, because completion and acceptance cannot occur after cancellation of the contract. In this case, cancellation occurred on June 29, 1995. Because none of the contractors filed suit on their claims within sixty days after June 29, 1995, Employers Mutual insists the claims are barred. We disagree.

Section 573.23 deals with filing claims. It is not a statute of limitations. Section 573.16 is the statute of limitations governing suits on the claims. In clear language, section 573.16 gives subcontractors sixty days "following the completion and final acceptance of the improvement" in which to bring suit on their claims. Iowa Code § 573.16. Thus, section 573.16 ties the limitation period for filing suit on the claims to completion and final acceptance of the *improvement;* it says nothing about cancellation of the contract. Even though the public corporation cancels the

contract with the contractor, the public corporation may still elect to complete the improvement and accept it once completed.

Here the city elected to complete the project following cancellation of the contract. The project had not yet been completed and accepted by the city when the district court ruled. Under the plain language of section 573.16, the statute of limitations for bringing suit on the claims had not yet begun to run.

### VII. *Disposition.*

Although for different reasons, we conclude the district court correctly granted the motions for summary judgment. *See In re Estate of Voss,* 553 N.W.2d 878, 879 (Iowa 1996) (appellate court may affirm on any ground appearing in the record and urged in the district court). We therefore affirm.

**AFFIRMED.**