# IN THE COURT OF APPEALS OF IOWA

No. 22-2098
Filed February 7, 2024

**ROCHON CORPORATION OF IOWA, INC., n/k/a GRAPHITE CONSTRUCTION GROUP, INC.,**
  Defendant-Appellant.

**vs.**

**DES MOINES AREA COMMUNITY COLLEGE,**
  Defendant-Appellee,
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

The principal contractor on a public construction project appeals the district court's ruling that the contractor was not yet due part of the retainage being held by the owner of the project. **REVERSED AND REMANDED WITH DIRECTIONS.**

Stephen D. Marso and Bryn E. Hazelwonder of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Jodie McDougal, Philip S. Bubb, and Michael D. Currie of Fredrikson & Byron, P.A., Des Moines, for appellee.

Heard by Greer, P.J., and Ahlers and Buller, JJ.

**GREER, Presiding Judge.**

We are faced with what one party characterizes as an issue of first impression and a second issue complicated by conflicting case law. Graphite Construction Group, Inc. (Graphite Construction),[1] the principal contractor on a public construction project owned by Des Moines Area Community College (DMACC), makes these assertions. The dispute between these two parties centers on the retainage[2] being held by DMACC; the question is what funds—if any—DMACC was required to release to Graphite Construction once it obtained the necessary bond to cover ("bonded off") a subcontractor's claim even though the project was not yet completed. Answering that question requires us to interpret the language of Iowa Code chapter 573 and to assess how the subsections interplay with each other. And, under that same code chapter, the second issue concerns whether, as a principal contractor, Graphite Construction can be awarded attorney fees. Neither party argues in support of the reasoning of the district court, which dismissed Graphite Construction's motion to compel payment of the retainage. In the end, we accept the reasoning of Graphite Construction and reverse the decision of the district court; we remand for entry of an order granting payment from the retention fund in the amount of $82,627.78, plus interest as provided by section 573.16(2). We deny Graphite Construction's request to award attorney fees.

---

[1] Graphite Construction was previously known as Rochon Corporation of Iowa, Inc.
[2] The owner of the project is required to pay the principal contractor monthly. Iowa Code § 573.12 (2022). "From the amount payable to the general contractor, the public [owner] is allowed—but not required—to retain up to five percent of the amount owed." *Star Equip., Ltd. v. State, Iowa Dep't of Transp.*, 843 N.W.2d 446, 453 (Iowa 2014) (citing Iowa Code § 573.12(1)).

**I. Background Facts and Proceedings.**

DMACC is the owner of a public construction project in Ankeny; it entered into a written agreement with Graphite Construction to be the principal contractor on the project. And Graphite Construction entered into a written contract with Metro Concrete, Inc. (Metro Concrete) to provide labor and materials as a subcontractor on the project.[3]

Metro Concrete initiated this suit against Graphite Construction, DMACC, and others who are not relevant here in April 2022. Metro Concrete asserted that it completed all services it was contracted to perform on DMACC's project and filed a claim, in accordance with Iowa Code chapter 573, for the unpaid balance of its subcontract: $217,221.32. Because the claim was not paid, Metro Concrete sought judgment on the retainage and any chapter 573 bond for $217,221.32, plus interest and attorney fees.

In May, Graphite Construction provided DMACC with a "bond for release of contract funds—Iowa Code § 573.16" for $434,442.64 (double the amount of Metro Concrete's claim) and asked DMACC to release the same amount from the retainage fund to Graphite Construction.

Then in July, Graphite Construction filed what it called a "motion to compel defendant DMACC to release retainage." Graphite Construction complained that DMACC refused to release the requested retainage in contravention of the statutory requirements in section 573.16(2), which states in relevant part:

---

[3] Metro Concrete filed for bankruptcy before this suit began; Charles L. Smith was appointed the trustee. For ease, we do not distinguish between the actions of Metro Concrete and the actions of Charles L. Smith acting as trustee in the bankruptcy of Metro Concrete.

> After an action is commenced, upon the general contractor filing with the public corporation or person withholding the funds, a surety bond in double the amount of the claim in controversy, conditioned to pay any final judgment rendered for the claims so filed, the public corporation or person shall pay to the contractor the amount of funds withheld.

It asked the court to "enter an order compelling DMACC to pay Graphite" $434,442.64 out of the retainage. Under the facts developed here, DMACC conceded that if it had no claim to keep 200% of the value of the unfinished work in the retainage fund, then Graphite Construction would be entitled to $434,442.64, which was double the amount of Metro Concrete's claim (i.e. the amount of the surety bond).

But other factors were at play according to DMACC. So DMACC resisted the motion by asserting that—as it had told Graphite Construction before—it was withholding the requested retainage funds based on the contract between DMACC and Graphite Construction, which provided that no retained percentage would become due until Graphite Construction submitted consent from its surety, and Graphite Construction had not done so. Additionally, DMACC relied on Iowa Code section 573.28(2)(c), which states:

> If labor and materials are yet to be provided at the time the request for the release of the retained funds is made, an amount equal to two hundred percent of the value of the labor or materials yet to be provided, as determined by the governmental entity's or the department's authorized contract representative, may be withheld until such labor or materials are provided.

Under this section, DMACC contended that because Graphite Construction was requesting the early release of retainage funds (i.e. requesting release before the project was completed and accepted), DMACC had the right to retain a value equal to 200% of the cost of labor and materials yet to be provided. (Everyone agreed

the project was not at final completion.) DMACC indicated that the architect placed a value of $78,795.00 on the unfinished work and materials, so it intended to withhold $157,590.00 of the retainage funds but would otherwise turn over any other funds related to Metro Concrete's claim once Graphite Construction submitted consent from the surety. This would not result in Graphite Construction receiving the full $434,442.64 it requested because the retainage fund held only $510,004.86.[4] DMACC asked the district court to require Graphite Construction to act in accordance with the contract it entered.

Graphite Construction filed a reply, asserting, "The parties' dispute revolves around retainage, specifically whether, after Graphite [Construction] furnished an Iowa Code section 573.16 bond discharging Metro Concrete's chapter 573 claim, DMACC must release to Graphite all retainage it is holding for Metro Concrete's Chapter 573 claim." Graphite Construction maintained that DMACC could not refuse to comply with the requirements of chapter 573 by contracting around them. It also argued that section 573.28 had no role in the dispute because that statute was applicable "prior to final completion and acceptance of the project, and . . . prior to the filing of a lawsuit seeking an adjudication of the rights to withheld funds" and—on its face—that section required Graphite Construction to initiate that

_____

[4] Because DMACC would keep $157,590.00 of the $510,004.86 retainage for unfinished work, it intended to release only $352,414.86 to Graphite Construction, which was $82,027.78 less than the requested amount.

These numbers changed in DMACC's sur-reply—in that filing, DMACC showed the value of the unfinished work and materials was $79,095 ($300 more than previously claimed). Using this updated number, DMACC retained $158,190 of the retainage, leaving Graphite Construction $82,627.78 short of its requested amount.

We note the discrepancy of $300 in DMACC's value of the unfinished work and materials but have found nothing in the record that explains it.

option.  *See* Iowa Code § 573.28 (requiring the contractor asking for early release of funds to first provide notice to all known subcontractors, sub-subcontractors, and suppliers that it was making the request).  Graphite Construction asserted that once a lawsuit was filed and bonded—as had occurred here—only section 573.16 applied so DMACC could not rely on section 573.28 to withhold the release of the full $434,442.64.  In its reply, Graphite Construction also asked the court to award it attorney fees under section 573.21.

DMACC filed a sur-reply brief because, as it contended, "additional events . . . occurred relating to the payment of the retainage."  According to DMACC, since it filed its initial resistance, Graphite Construction had provided consent from the surety for partial release of the retainage.  After that, DMACC released $351,814.86 to Graphite Construction.  It continued to retain $158,190, which represented 200% of the value of the work and materials that were still needed.  The dispute between DMACC and Graphite Construction about the retainage being held was therefore limited to the difference between the amount Graphite Construction requested ($434,442.64) and the amount DMACC actually released ($351,814.86): $82,627.78.  For the first time, DMACC asserted that Graphite Construction's motion to compel was "procedurally improper," arguing that Graphite Construction's so-called motion to compel was actually a request for permanent injunctive relief or for partial summary judgment.  Yet, DMACC complained Graphite Construction had not asserted a cause of action against it, thus the district court could not consider the "improper vehicle" used to seek relief.

At this stage, DMACC again relied on section 573.28 for authority it was allowed to retain the funds and pointed to a provision of the parties' contract that

largely mirrored the statute. DMACC argued that if the court reached the merits of Graphite Construction's request, it should deny the motion because while the bond Graphite Construction obtained following Metro Concrete's claim was "intended to nullify the impact of the claims filed against the retainage" and prevented DMACC from withholding "the retainage on the basis that subcontractors or suppliers have filed claims against the retainage," nothing in section 573.16 "require[d] the owner to ignore any other bases for withholding retainage; it merely remove[d] the impediment caused by the filed claims." For this reason, DMACC asserted, while it had complied with section 573.16, it continued to retain $158,190 (200% of $79.095) for unfinished work. Finally, DMACC argued Graphite Construction was not entitled to recover attorney fees under section 573.21 because the right to recover was limited to claimants, which the principal contractor could not be under the statute.

Following a hearing, the district court denied Graphite Construction's motion. Taking a different tack altogether, the district court ruled DMACC was not yet required to release any of the retainage related to Metro Concrete's claim because section 573.16(1) provided that the appropriate time for the action to be brought "to adjudicate all rights to [the retainage] fund" was "at any time after the expiration of thirty days, and not later than sixty days, following the completion and final acceptance of said improvement." In other words, the district court ruled section 573.16(2) is not triggered until after the project is completed and accepted—neither party claimed the project had yet reached that stage. The district court also denied Graphite Construction's request for attorney fees under section 573.21, concluding it could not recover because it was not the prevailing

party. Given this ruling, the district did not address DMACC's contention that Graphite Construction had not used the proper vehicle to obtain relief.

Graphite Construction appeals.

## II. Discussion.

To summarize the claims, Graphite Construction, relying on Iowa Code section 573.16(2), maintains that once it bonded off the claim filed by Metro Concrete, DMACC was statutorily required to release the full amount of the bond. DMACC responds that section 573.28(2)(c) provides it with authority to withhold certain retainage funds for the value of uncompleted work and materials while still complying with section 573.16(2). Additionally, the parties also raise questions of jurisdiction, authority, and as mentioned above, whether section 573.21 allows a principal contractor to recover attorney fees if successful in obtaining the release of retainage funds.

### A. Jurisdiction and Authority.

DMACC argues the district court lacked subject matter jurisdiction over Graphite Construction's motion to compel because Graphite Construction never initiated an action against DMACC. As DMACC recognizes, while it never raised the issue of subject matter jurisdiction to the district court, the issue can be raised at any stage in the proceedings. *See Cooper v. Kirkwood Cmty. Coll.*, 782 N.W.2d 160, 164 (Iowa 2010). And "[o]nce a court determines that it lacks subject matter jurisdiction over a claim, it has no power to enter a judgment on the merits and must dismiss the action." *Id.* But

> "[s]ubject matter jurisdiction refers to 'the authority of a court to hear and determine cases of the *general class* to which the proceedings in question belong, not merely the particular case then occupying the

court's attention.' "A court may have subject matter jurisdiction but for one reason or another may not be able to entertain a particular case. In such a situation we say the court lacks authority to hear that particular case."

Importantly, "[a] court may lack authority to hear a particular case 'where a party fails to follow the statutory procedures for invoking the court's authority.'"

*Alliant Energy-Interstate Power & Light Co. v. Duckett*, 732 N.W.2d 869, 874–75 (Iowa 2007) (second alteration in original) (citations omitted).

The district court is a court of general jurisdiction, and "[i]t is empowered by the Iowa Constitution to hear all cases in law and equity." *Shott v. Shott*, 744 N.W.2d 85, 87 (Iowa 2008); *see also* Iowa Const. art. V, § 6 ("The district court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law."); Iowa Code § 602.6101 ("The district court has exclusive, general, and original jurisdiction of all actions, proceedings, and remedies, civil, criminal, probate, and juvenile . . . ."). It is clear the court had subject matter jurisdiction over this case. *See* Iowa Code § 573.16(1) (directing "[t]he public corporation, the principal contractor, any claimant for labor or material who has filed a claim, or the surety on any bond given for the performance of the contract," to "bring action in equity in the county where the improvement is located").

That said, the question—if any—is whether the court had the *authority* to decide this case. *See, e.g.*, *State v. Rutherford*, 997 N.W.2d 142, 144 (Iowa 2023) ("There is an important difference between a court's subject matter jurisdiction and its authority to act."); *Knutson v. Oellrich*, No. 22-1675, 2023 WL 2673137, at *3 (Iowa Ct. App. Mar. 29, 2023) (recognizing it is not uncommon for parties to

conflate the concept of jurisdiction with that of authority). However, unlike the situation with subject matter jurisdiction, "an impediment to a court's *authority* can be obviated by consent, waiver or estoppel." *State v. Mandicino*, 509 N.W.2d 481, 483 (Iowa 1993). And here, even if we understand DMACC's argument in its sur-reply that Graphite Construction's motion was "procedurally improper" to be raising the issue of the court's authority, the district court never ruled on the issue. So even if DMACC did not waive the issue, it failed to preserve error to allow for our review. *See State v. Crawford*, 972 N.W.2d 189, 198 (Iowa 2022) ("When we speak of error preservation, all we mean is that a party has an obligation to raise an issue in the district court and obtain a decision on the issue so that an appellate court can review the merits of the decision actually rendered."). As an aside, we note that under our reading of section 573.16(1), after suit is initiated by a claimant, the statute authorizes the district court authority "to adjudicate all rights to said [retainage] fund." *See also* Iowa Code § 573.18. But as the error was not preserved, we do not consider this issue further.[5]

---

[5] We recognize that "[i]t is well-settled law that a prevailing party can raise an alternative ground for affirmance on appeal without filing a notice of cross-appeal, as long as the prevailing party raised the alternative ground in the district court." *In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016) (citation omitted). And the party can invoke the alternative ground even if the district court "ignored" it. *EnviroGas, L.P. v. Cedar Rapids/Linn Cnty. Solid Waste Agency*, 641 N.W.2d 776, 781 (Iowa 2002). But DMACC's argument that the district court lacked authority is not an alternative ground for affirmance. *See, e.g.*, *Hawkeye Foodservice Distrib., Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 609 (Iowa 2012) ("[A] successful party in the district court may, without appealing, *save the judgment* . . . based on ground urged in the district court but not included in that court's ruling." (emphasis added) (citation omitted)).

An argument the court lacks authority to decide a case or issue is a claim the court should dismiss the action rather than enter a ruling on the merits. *See, e.g.*, *State v. Mickey*, No. 22-0130, 2023 WL 1810518, at *1 (Iowa Ct. App. Feb. 8, 2023) (dismissing appeal where court lacked authority to decide the issue before

**B. Release of Retainage.**

Here, Metro Concrete submitted a claim alleging Graphite Construction owed it $217,221.32 at completion of its subcontractor work and then initiated the current lawsuit. And, Graphite Construction was "obliged to pay those 'having contracts directly with the principal . . . all just claims due them for labor performed or materials furnished.'" *S.M. Hentges & Sons Inc. v. City of Iowa City*, No. 18-1933, 2020 WL 377030, at *2 (Iowa Ct. App. Jan. 23, 2020) (alteration in original) (citing Iowa Code §§ 573.6(1), .22). It is undisputed that both at the time Metro Concrete brought the suit and when the district court decided Graphite Construction's request for the retainage to be released, the public construction project was not yet completed and had not been accepted by DMACC. So Graphite Construction made an early request for retainage funds and relied on section 573.16(2) for authority that DMACC was required to release twice the amount of Metro Concrete's claim from retainage once Graphite Construction bonded off. With this backdrop, Graphite Construction frames the issue as whether it was immediately entitled to the amount of retainage being held for Metro Concrete's claim ($434,442.64) once Graphite Construction bonded off or, as the district court ruled, it must wait because section 573.16(2), which provides "the public corporation . . . shall pay to the contractor the amount of funds withheld," is not triggered until after the project is completed and accepted. But there's also a

it). So, if DMACC was successful in its "authority" argument here, we would vacate—not affirm—the district court's ruling interpreting and applying chapter 573. *See, e.g.*, *Knutson*, 2023 WL 2673137, at *3–4 (vacating district court ruling after concluding the court lacked authority to decide the substantive issue). Because the argument is not an alternative ground for affirmance, DMACC's failure to preserve error on the issue prevents us from considering it.

third option, for which DMACC seems to advocate. Rather than a simple yes or no regarding whether section 573.16(2) applies at this point in the construction project, it could be both that section 573.16(2) applies and that DMACC's release of the retainage funds are simultaneously governed by another statute, section 573.28(2)(c). If the third option is correct, we need to decide what happens when, as here, there is not enough retainage funds for the public owner to both release the full bonded off amount for a subcontractor's claim and retain the value of 200% of the unfinished work and unprovided materials.[6]

As the issue is one concerning the interpretation and application of statutes, our review is for correction of errors at law. *See Noll v. Iowa Dist. Ct.*, 919 N.W.2d 232, 235 (Iowa 2018) (interpreting a statute); *Babka v. Iowa Dep't of Inspections & Appeals*, 967 N.W.2d 344, 352 (Iowa Ct. App. 2021) (applying a statute).

When interpreting a statute, our goal is to determine legislative intent. *Star Equip.*, *Ltd. v. State*, 843 N.W.2d 446, 452–55 (Iowa 2014) (providing a comprehensive overview of chapter 573 and the purposes behind the statute). "We derive legislative intent not only from the language used but also from the statute's subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations." *Id.* at 455 (quoting *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 49 (Iowa 2012)). "We construe chapter 573 liberally with a view

---

[6] In other words, if the retainage fund consisted of $592,632.64, DMACC could have both released the retainage for Metro Concrete's claim ($434,442.64) and retained 200% the value of the unfinished work and materials ($158,190). But because the fund had less than the amount required to cover both, we would need to determine whether the law requires DMACC to prioritize one over the other.

to promoting its objects and assisting the parties in obtaining justice." *Id.* (cleaned up). And "[t]he purpose of chapter 573 is to protect subcontractors and materialmen against nonpayment." *Id.*, *accord id.* at 449 (noting situations under chapter 573 where a public entity might have to "step in the shoes" of the general contractor to pay balances owed a subcontractor). "All provisions of the chapter should be considered as parts of a connected whole and harmonized if possible." *Sinclair Refin. Co. v. Burch*, 16 N.W.2d 359, 361 (Iowa 1944) (discussing then-chapter 452).

We begin with some general discussion of chapter 573. At its core, chapter 573 operates as a claims process for subcontractors participating in public improvement projects. To that end, in a public improvement project, if the contract price equals or exceeds twenty-five thousand dollars, a performance bond is required, with surety, "conditioned for the faithful performance of the contract." Iowa Code § 573.2(1). The bond is mandatory and runs to the public corporation. *Id.* §§ 573.3, .5. As monthly payments are made pursuant to the contract, monies earned by the principal contractor are retained by the public corporation and, as our supreme court has explained, the retainage held by the public owner—made up of no more than five percent of the monthly payment owed to the principal contractor—is a protection for subcontractors. *See Star Equip.*, 843 N.W.2d at 453; *see also* Iowa Code § 573.12(1)(a) ("Payments made under contracts for the construction of public improvements, unless provided otherwise by law, shall be made on the basis of monthly estimates of labor performed and material delivered, as determined by the project architect or engineer. The public corporation shall

retain from each monthly payment not more than five percent of that amount which is determined to be due according to the estimate of the architect or engineer.").

The purpose of the retainage fund is "for the payment of claims for materials furnished and labor performed." Iowa Code § 573.13; *see also Star Equip.*, 843 N.W.2d at 452 ("Subcontractors on public improvements left unpaid by the general contractor ordinarily would collect from funds retained by the state or through claims against a surety bond."). Section 573.14 outlines the process for retention and payment of those funds held by the public corporation and, as here, provides how subcontractors might finish their portion of the project and seek monies upon completion of their contract. "Subcontractors owed money on public construction projects may submit their claims to the responsible public corporation." *Star Equip.*, 843 N.W.2d at 453; *see also* Iowa Code §§ 573.7, 10. But, under section 573.14, the public corporation must hold the retainage for thirty days after completion and acceptance of the project. "If no claims are submitted against the retained funds, or if excess funds remain after all claims have been satisfied, the balance is released to the general contractor." *Star Equip.*, 843 N.W.2d at 453 (citing Iowa Code § 573.14). But section 573.14(2) specifically provides that "this subsection does not abridge any of the rights set forth in section 573.16." Section 573.16(2) removes the restrictions required under 573.14 if the process provided in section 573.16 is followed.

To address the realities of the public construction world, chapter 573 provides various options to access retainage funds depending on circumstances, such as the stage of the construction and the status of the party requesting funds. Along that line, our supreme court has recognized that some sections of

chapter 573 apply to different factual scenarios, while other sections might not, so the language of the chapter must be navigated when addressing claims against retained funds. *See Emps. Mut. Cas. Co. v. City of Marion*, 577 N.W.2d 657, 659–62 (Iowa 1998) (recognizing the interplay between sections of chapter 573 based upon the party's status and the claims made and resolving those conflicts in the language of various sections); *see also Star Equip.*, 843 N.W.2d at 454 (analyzing the reality of an exception to the bond requirement for "targeted small businesses" so as to allow subcontractors a remedy against the public entity for unpaid claims); *Accurate Controls, Inc. v. Cerro Gordo Cnty. Bd. of Supervisors*, 627 F. Supp. 2d 976, 1007 (N.D. Iowa 2009) (noting sections 573.12 (paying progress payments as earned), .14 (paid at final completion and acceptance of project) and .15A (paid when project is 95% completed) offer paths to release retainage to subcontractors if certain circumstances are met).

At the heart of our analysis, we must address the interplay, if any, between sections 573.16 and 573.28. To start, section 573.16—titled "optional and mandatory actions—bond to release," which the parties' dispute largely centers on, states:

> 1. The public corporation, the principal contractor, any claimant for labor or material who has filed a claim, or the surety on any bond given for the performance of the contract, may, at any time after the expiration of thirty days, and not later than sixty days, following the completion and final acceptance of said improvement, bring action in equity in the county where the improvement is located to adjudicate all rights to said fund, or to enforce liability on said bond.
> 2. Upon written demand of the contractor served, in the manner prescribed for original notices, on the person filing a claim, requiring the claimant to commence action in court to enforce the claim, an action shall be commenced within thirty days, otherwise the retained and unpaid funds due the contractor shall be released. Unpaid funds shall be paid to the contractor within twenty days of the

receipt by the public corporation of the release as determined pursuant to this section. Failure to make payment by that date shall cause interest to accrue on the unpaid amount. Interest shall accrue during the period commencing the twenty-first day after the date of release and ending on the date of the payment. The rate of interest shall be determined pursuant to section 573.14. After an action is commenced, upon the general contractor filing with the public corporation or person withholding the funds, a surety bond in double the amount of the claim in controversy, conditioned to pay any final judgment rendered for the claims so filed, the public corporation or person shall pay to the contractor the amount of funds withheld.

Section 573.16(1) has been referred to as "the statute of limitations governing suits on the claims," which "ties the limitation period for filing suit on the claims to completion and final acceptance of the improvement." *Emps. Mut.*, 577 N.W.2d at 662 (emphasis removed). More specifically, section 573.16(1) allows a party to "bring action in equity . . . to adjudicate all rights" to the retainage fund, but only "after the expiration of thirty days, and not later than sixty days, following the completion and final acceptance of said improvement." *See Biermann Elec. v. Larson & Larson Constr., LLC*, No. 13-0467, 2014 WL 69672, at *2 (Iowa Ct. App. Jan. 9, 2014) (recognizing section 573.16 "sets forth the procedure for claimants to bring an action to judicially enforce . . . rights to a fund" and "establishes a strict time frame for bringing such an action").

The district court applied the limitation period in section 573.16(1) to Granite Construction's request made under section 573.16(2), concluding the request for release of the retainage was not timely. But Granite Construction argues—and we agree—section 573.16(2) operates separately from the first subsection and allows the principal contractor to access retained funds to pay a subcontractor's claim for monies due for its work on the improvement. *See Dobbs v. Knudson, Inc.*, 292 N.W.2d 692, 694 (Iowa 1980) (noting the principal contractor filed a bond under

section 573.16 so that it could obtain payment of the retainage while securing any possible judgments).

Under section 573.16(2), once a claim is made, if the principal contractor demands in writing that the claimant commence action on the claim in court, and the claimant does so under the deadline imposed in 573.16(2), the amount of the claim can be determined and paid from retainage. As a protection to the public corporation and other subcontractors with potential claims, the principal contractor must file a surety bond in double the value of the claim, which also allows the principal contractor to avoid the imposition of interest on the unpaid sums. *See Ewing Concrete LLC v. Rochon Corp. of Iowa*, No. 14-1628, 2016 WL 146275, at *1 (Iowa Ct. App. Jan. 13, 2016) ("Rochon personally served Ewing with a thirty-day demand letter under Iowa Code section 573.16, requiring Ewing 'commence action in court, within [thirty] days of service of this letter, to enforce its Iowa Code chapter 573 claim' . . . . Iowa Code section 573.16 and relevant case law interpreting this section provide that if Ewing fails to timely file its petition, its statutory claim is time barred." (first alteration in original)).

Contrast the language of section 573.16(2) with that of section 573.28—entitled "early release of retained funds." Both involve means to access retainage funds.[7] The latter section was added to chapter 573 in 2018.[8] With its relatively

---

[7] The parties acknowledge that both section 573.16(2) and section 573.28 constitute early access exceptions to the rules governing the payment of the retainage—the district court just interpreted section 573.16 differently.

[8] "In 2006, the legislature created a new law that governed chapter 573's release of retainage, placing it at Iowa Code section 26.13 within the public construction competitive bidding statute." Stephen D. Marso, *Pub. Constr. Liens in Iowa: A Hist. and Analysis of Iowa Code Chapter 573*, 60 Drake L. Rev. 101, 176–78 (Fall 2011) (footnotes omitted); *see also* 2006 Iowa Acts ch. 1017, § 13. For reasons

recent addition to chapter 573, we have found no Iowa case that describes the interplay between section 573.28 and the other sections of the chapter. To plow new ground, we start with the language of section 573.28 that applies to our inquiry:

> 1. For purposes of this section:
>
> . . . .
>
> f. "*Substantially completed*" means the first date on which any of the following occurs:
>
> (1) Completion of the public improvement project or the highway, bridge, or culvert project or when the work on the public improvement or the highway, bridge, or culvert project has been substantially completed in general accordance with the terms and provisions of the contract.
>
> (2) The work on the public improvement or on the designated portion is substantially completed in general accordance with the terms of the contract so that the governmental entity or the department can occupy or utilize the public improvement or designated portion of the public improvement for its intended purpose. This subparagraph shall not apply to highway, bridge, or culvert projects.
>
> (3) The public improvement project or the highway, bridge, or culvert project is certified as having been substantially completed by either of the following:
>
> (a) The architect or engineer authorized to make such certification.
>
> (b) The authorized contract representative.
>
> . . . .
>
> 2. Payments made by a governmental entity or the department for the construction of public improvements and highway, bridge, or culvert projects shall be made in accordance with the provisions of this chapter, except as provided in this section:
>
> a. At any time after all or any part of the work on the public improvement or highway, bridge, or culvert project is *substantially completed*, the contractor may request the release of all or part of

---

unknown, in 2018, the same language was renumbered to section 573.28 and removed from chapter 26, effective July 1, 2018. *See* 2018 Iowa Acts ch. 1097, § 5.

the retained funds owed. The request shall be accompanied by a sworn statement of the contractor that, ten calendar days prior to filing the request, notice was given as required by paragraphs "f" and "g" to all known subcontractors, sub-subcontractors, and suppliers.

b. Except as provided under paragraph "c", upon receipt of the request, the governmental entity or the department shall release all or part of the retained funds. Retained funds that are approved as payable shall be paid at the time of the next monthly payment or within thirty days, whichever is sooner. If partial retained funds are released pursuant to a contractor's request, no retained funds shall be subsequently held based on that portion of the work. If within thirty days of when payment becomes due the governmental entity or the department does not release the retained funds due, interest shall accrue on the amount of retained funds at the rate of interest that is calculated as the prime rate plus one percent per year as of the day interest begins to accrue until the amount is paid.

c. If labor and materials are yet to be provided at the time the request for the release of the retained funds is made, an amount equal to two hundred percent of the value of the labor or materials yet to be provided, as determined by the governmental entity's or the department's authorized contract representative, may be withheld until such labor or materials are provided.

d. An itemization of the labor or materials yet to be provided, or the reason that the request for release of retained funds is denied, shall be provided to the contractor in writing within thirty calendar days of the receipt of the request for release of retained funds.

e. The contractor shall release retained funds to the subcontractor or subcontractors in the same manner as retained funds are released to the contractor by the governmental entity or the department. Each subcontractor shall pass through to each lower-tier subcontractor all retained fund payments from the contractor.

f. Prior to applying for release of retained funds, the contractor shall send a notice to all known subcontractors, sub-subcontractors, and suppliers that provided labor or materials for the public improvement project or the highway, bridge, or culvert project.

(Emphasis added.)

To meet the overall goal of chapter 573, the statute provides a process at various stages during the construction project to allow access to the retained funds. If the project is at completion and final acceptance, a claim can be paid if the specific guidelines are followed. *See* Iowa Code § 573.14. Once a project reaches ninety-five percent completion of the contract there is a path to access the retainage. *See id.* §§ 573.15A, .27. If a subcontractor makes a claim and institutes suit, the principal contractor can access retainage by posting a bond. *See id.* § 573.16(2). Likewise, under section 573.28, at the stage of "substantial completion" the payment can be made.[9] In reviewing the entire statute, each of the processes to access retained funds provided in chapter 573 requires steps that serve as a protection to claimants before payment is made. Yet, DMAAC asserts section 573.28(2)(c) comes into play at any time in the construction process when a principal contractor makes an early request for retainage (i.e. there remains work to be done on the project). But DMAAC is advocating that understanding of section 573.28(2)(c) in isolation and does not consider that it is part of the steps in a process that starts with the requirement of substantial completion of the project at section 573.28(2)(a). "Context is critical," and on the face of this subsection, the process defined is specific to the early release of retention at the substantial-

---

[9] DMAAC argued in its appeal brief that substantial work on the project was not completed at the time of the request for retainage funds. While there is no discussion in the chapter over the difference between ninety-five percent completion and substantial completion, we assume that there is a difference since the legislature provided different processes for each. *Compare* Iowa Code § 573.15(A) (allowing the public corporation to "release retained funds upon completion of ninety-five percent of the contract" and providing the process), *with id.* § 573.28 (providing for "the release of all or part of the retained funds owed" after the project is "substantially completed" and providing the process that must be followed).

completion stage.  *Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 681 (Iowa 2022) (noting context is derived "from the language's relationship to other provisions [within] the same statute").  We must read all of the paragraphs of section 573.28(2) together.  *See Doe v. State*, 943 N.W.2d 608, 613 (Iowa 2020) ("[W]e read statutes as a whole rather than looking at words and phrases in isolation [when interpretating statutes]." (first alteration in original) (citation omitted)).  As we read these paragraphs, each is triggered by the "receipt of the request."  *See* Iowa Code § 573.28(2)(a)–(d), (f), (g).  And in this section that "request" "shall be accompanied by a sworn statement of the contractor" that notice was given to the subcontractors.

In sum, if the contractor chooses to seek advance payment of the retention at the substantial completion stage, it must—as section 573.28 requires—provide a sworn statement that it has served all subcontractors a notice of "contractor's request for early release of retained funds."  *Id.* § 573.28(2)(a).  That option was not pursued here.  Likewise, section 573.28(2)(c) does not just pertain to labor or materials left uncompleted by the *principal contractor*, it also addresses outstanding labor and materials of *subcontractors*.  *See id.* § 573.28(2)(g) (setting out the notice required to subcontractors, noting the "purpose of the request is to have [name of government entity or department] release and pay funds for all work that has been performed and charged").  Thus, it makes sense that before the governmental entity can release all but two hundred percent of remaining labor and material expense under section 573.28(2)(c), the subcontractors are all notified of a potential early release of funds from the retainage.  Thus, we cannot

apply section 573.28(2)(c) because under these facts there is no interplay between this section and 573.16(2).

Finally, as Graphite Construction correctly pointed out during oral argument, DMACC is still protected by the performance bond posted at the beginning of the project under section 573.2, which is "applicable only to claims not satisfied from the retainages." *Econ. Forms Corp. v. City of Cedar Rapids*, 340 N.W.2d 259, 264 (Iowa 1983); *see also* Iowa Code § 573.26 ("Nothing in this chapter shall be construed as limiting in any manner the right of the public corporation to pursue any remedy on the bond given for performance of the contract."). Such bond "run[s] to the public corporation" and is in "an amount not less than seventy-five percent of the contract price" "to insure the fulfillment of every condition . . . embraced in said bond." Iowa Code § 573.5.

As a final note, we return to the district court ruling. To arrive at its resolution that because Metro Concrete's claim was filed prematurely—before completion of the improvement—and thus, Graphite Construction could not access the retainage, the district court relied upon *Biermann Electric.* 2014 WL 69672, at *2. But that reliance is misplaced, as the public entity in *Biermann* had already paid the retainage it held to the principal contractor, Larson Construction, when Larson bonded off the claim related to the subcontractor, Biermann. *Id.* at *6 n.4. So, the question there was not the same as here. Biermann, as subcontractor, sought payment of the retainage already paid to the principal contractor, Larson Construction, plus delay damages, and Larson Construction refused to pay while the matter was tied up in an arbitration proceeding with the city. *Id.* at *1–3. And in *Biermann*, the question was whether the subcontractor's suit on its claim could

be brought in the district court at that time, but a panel of our court recognized the question of whether the claim was timely was not before it. *Id.* at *3. Turning to the proceedings before us, no one disputed the timeliness of the subcontractor's claim or its right to bring suit; the principal contractor made written demand of Metro Concrete to bring suit as required under section 573.16(2), and the inquiry focused on whether Graphite Construction could receive all of the retained funds after bonding off or if another statute allowed DMACC to still keep part of the retainage. So we find no help in *Biermann* because we have two different questions involving two differently situated parties. Finally, neither party here argued *Biermann* was instructive on the questions they presented.

Finding the district court erred in denying Graphite Construction's motion to compel the release of retainage funds, we reverse the ruling and remand for an order granting payment from the retention fund in the amount of $82,627.78, plus interest as provided by section 573.16(2).

### C. Attorney Fees.

Graphite Construction requests an award of attorney fees. It challenges the district court's ruling denying its request and asks us to rule it is also entitled to appellate attorney fees. Graphite Construction relies on Iowa Code section 573.21. *See Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 707 (Iowa 2020) (recognizing "an award of attorney fees is not allowed unless authorized by statute or contract"). Section 573.21 states, "The court may tax, as costs, a reasonable attorney fee in favor of *any claimant* for labor or materials who has, in whole or in part, established a claim." (Emphasis added.) So, is Graphite Construction a "claimant"? To the extent this exercise requires statutory

interpretation of this code section, we review for corrections of errors at law. *See EMC Ins. Grp., Inc. v. Shepard*, 960 N.W.2d 661, 668 (Iowa 2021).

The parties disagree about whether a principal contractor is ever entitled to attorney fees under section 573.21. DMACC argues that, on its face, section 573.21 limits recovery to "any claimant . . . who has . . .established a claim" and maintains that section 573.7 excludes principal contractors from being a claimant. Section 573.7 is titled "[c]laims for material or labor" and states:

> Any person, firm, or corporation who has, *under a contract with the principal contractor or with subcontractors, performed labor, or furnished material, service, or transportation,* in the construction of a public improvement, may file, with the officer, board, or commission authorized by law to let contracts for such improvement, an itemized, sworn, written statement of the claim for such labor, or material, service, or transportation.

Iowa Code § 573.7(1) (emphasis added). According to DMACC, because a principal contractor cannot be "under a contract" with itself and does not perform labor or furnish material, service, or transportation for a subcontractor, the principal contractor cannot be a "claimant" and therefore is not entitled to attorney fees under section 573.21. Graphite Construction seems to concede it is not a claimant under section 573.7 but argues that nothing in the language of the attorney-fee provision expressly limits the award of attorney fees to section 573.7 claimants; and here, it is making a claim for labor or materials from the retention fund.

As Graphite emphasized in its routing statement,[10] there appears to be a conflict between opinions offered by our court over the past twenty years.

_____

[10] Iowa Rule of Appellate Procedure 6.903(2)(d) requires an appellant's brief to include a routing statement that "indicate[s] whether the case should be retained by the supreme court or transferred to the court of appeals and shall refer to the applicable criteria in rule 6.1101."

*Compare Midland Restoration Co. v. Sioux City Cmty. Sch. Dist.*, No. 02-0625, 2003 WL 21229272, at *5 (Iowa Ct. App. May 29, 2003) (awarding fees to a principal contractor where only the amount not the authority was disputed), *with Saydel Cmty. Sch. Dist. v. Denis Della Vedova, Inc.*, No. 06-0070, 2007 WL 1201748, at *1–2 (Iowa Ct. App. Apr. 25, 2007) (refusing to award fees to the principal contractor and pointing out *Midland* was not controlling authority). Yet we are not always comparing "apples to apples" because these cases often have facts that are specific to obligations between the parties. And as both parties recognize, in *Midland* a panel of this court specifically read section 573.21 to allow attorney fees to a principal contractor. 2003 WL 21229272, at *5. But, we find little precedential value in that ruling, as the issue regarding what authority—if any— allowed for the recovery of attorney fees was not contested; rather, the owner of the public project "recognize[d] an award of appellate attorney fees would be authorized under Iowa Code section 573.21." *Id.* The court was only asked to decide the appropriate amount of attorney fees—not whether the principal contractor was allowed to recover them under the statute. *Id.* At least one law review article on the subject of public construction liens has come to the same conclusion, recognizing the *Midland* decision may have allowed the principal contractor to recover as a claimant because "the parties to the lawsuit did not dispute that [principal] contractors were 'claimants' who had attorney-fee rights under the statute." *Stephen D. Marso*, *Pub. Constr. Liens in Iowa: A Hist. and Analysis of Iowa Code Chapter 573*, 60 Drake L. Rev. 101, 187 (Fall 2011). And, the author opined, "[t]o the extent that [*Midland*] stands for the proposition that a

[principal] contractor is a 'claimant' under chapter 573 and is entitled to attorney-fee rights under the section 573.21, it is incorrect." *Id.* at 188 (footnote omitted).

If Graphite Construction is correct in its interpretation of the term "claimant," because it has prevailed in this action, it would be entitled to attorney fees. *See* Iowa Code § 573.21; *see also Star Equip.*, 843 N.W.2d at 463 (considering whether to award attorney fees under section 573.21 only after concluding the subcontractors prevailed in establishing their claims); *see also Grady v. S.E. Gustafson Constr. Co.*, 103 N.W.2d 737, 743 (Iowa 1960) (affirming fee award under section 573.21 to party who prevailed in part). But we disagree with Graphite Construction's proffered interpretation.

First, throughout chapter 573, the legislature used the term "principal contractor" to describe an entity separate from a "claimant." And, to get to its interpretation, Graphite Construction now characterizes its entitlement to the retention funds as a "claim for labor and materials." As defined in section 573.7, "claims for material or labor" are available to "[a]ny person, firm, or corporation who has, *under a contract with the principal contractor or with subcontractors, performed labor, or furnished material, service, or transportation*." (Emphasis added.) That definition would not include a request by the principal contractor for payment of retained monies. And, Graphite Construction's request is indeed a claim against retainage. Section 573.15 requires that the "person, firm, or corporation that has performed labor for or furnished materials" notify "the principal contractor in writing" the details of the claim, so it is nonsensical to assume Graphite Construction would be required to notify itself about the details of its own claim. Of course, this militates against Graphite Construction's interpretation, as

"[w]e always look for an interpretation of a statute that is reasonable and avoids absurd results." *State v. Mathias*, 936 N.W.2d 222, 232 (Iowa 2019). Section 573.15A, labeled "[e]arly release of retained funds," delineates these separate parties who can file suit: "The public corporation, the principal contractor, or any *claimant for labor or materials*, . . . who has filed a claim." (Emphasis added.) When we read the statute as a whole, we cannot see how Graphite Construction can wiggle the terms beyond the common usage in all of the other sections chapter 573. *See Emps. Mut. Cas. Co.*, 577 N.W.2d at 660 (noting that one rule of statutory construction requires us to give effect to all of the language in the statute). For example, section 573.17 defines the "parties" involved under the statute as: "The official board or officer letting the contract, the principal contractor, all claimants for labor and material who have filed their claim, and the surety on any bond given for the performance of the contract . . . ." Further, Graphite Construction offered no authority for its position that the principal contractor can also be a claimant. Our task is to construe the words as how they are actually in the statute. *See Tweeten v. Tweeten*, 999 N.W.2d 270, 280 (Iowa 2023) (applying statutory construction rules to terminology in chapter 85 and noting "[o]rdinarily, we may not, under the guise of judicial construction, add modifying words to the statute or change its terms" (alteration in original) (citation omitted)).

To make Graphite Construction a claimant is nonsensical when reviewing the entire chapter. Is it next going to argue that the public corporation must withhold a sum equal to double the total amount of the claim under section 573.14? Or that a principal contractor must secure a bond under section 573.16 in double the amount of its "claim"? Finally, it would be very easy for the legislature to have

clarified in section 573.21 that any principal contractor is also entitled to attorney fees.  In sum, we deny Graphite Construction's request for attorney fees.

**III. Conclusion.**

Because Graphite Construction's request for release of the full value of the surety bond from the retainage fund was timely and appropriate under section 573.16(2), and because DMACC cannot rely on section 573.28 to withhold some retainage based on the value of uncompleted labor and materials, we reverse the decision of the district court and remand for an order granting payment from the retention fund in the amount of $82,627.78, plus interest as provided by section 573.16(2).  We deny the request to award attorney fees to Graphite Construction.

**REVERSED AND REMANDED WITH DIRECTIONS.**