# In the Iowa Supreme Court

No. 22–2098

Submitted October 10, 2024—Filed November 22, 2024

**Rochon Corporation of Iowa, Inc.** n/k/a **Graphite Construction Group, Inc.,**

Appellant,

vs.

**Des Moines Area Community College,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, judge.

A public entity seeks further review of the court of appeals' reversal of the district court's ruling that the entity was not obligated to pay certain funds to a contractor. **Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

May, J., delivered the opinion of the court, in which all justices joined.

Stephen D. Marso (argued) and Bryn E. Hazelwonder of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Jodie McDougal (argued), Philip S. Bubb, and Michael D. Currie of Fredrikson & Byron, P.A., Des Moines, for appellee.

Jason Craig and Kristine Stone of Ahlers & Cooney, P.C., Des Moines, for amici curiae Community Colleges of Iowa, Iowa Association of School Boards, Iowa State Association of Counties, and Iowa League of Cities.

**May, Justice.**

Iowa Code chapter 573 (2022) regulates contracts for the construction of public improvements. Chapter 573's requirements are aimed at assuring that public construction projects get completed and that contractors and subcontractors get paid.

One of those requirements is called "retainage." Retainage is money that the public entity collects by withholding a small portion (no more than 5%) of its monthly progress payments to the contractor. The point of retainage is to assure "payment of claims for materials furnished and labor performed on" the project. Iowa Code § 573.13. After all of those claims are satisfied, the remainder of the retainage can be released to the contractor.

Here there is a dispute as to when—exactly—the contractor can receive that retainage. The contractor here claims that it is entitled to the retainage now *even though* the construction project is not yet completed. This is true, the contractor claims, because it has taken certain procedural steps, including the filing of a bond.

We disagree. Except in limited circumstances that are specified in the statutory text, chapter 573 does not allow the contractor to obtain the retainage before the "completion and final acceptance" of the project. *Id.* § 573.14(1). And the textually specified exceptions don't apply here. So because there has been no "completion" much less "final acceptance" of the project, the contractor cannot obtain the retainage. The district court was correct to deny the contractor's motion to compel release of the retainage.

**I. Factual and Procedural Background.**

Des Moines Area Community College (DMACC) is a public entity. In 2019, DMACC hired Graphite Construction Group, Inc. (Graphite) to serve as the contractor for a construction project (project) on DMACC's Ankeny campus.

Work on the project proceeded. Graphite made monthly requests for progress payments. DMACC's project architect reviewed the requests. Subject to the architect's approval, DMACC generally made payments consistent with Graphite's requests. But DMACC withheld 5% of each payment as retainage.

By January 2022, the project was approaching completion. On January 4, Graphite made its twenty-ninth application for payment. This amounted to Graphite's final invoice, through which it requested final payment under the contract. By that time, all that was left under the contract was the retainage, which amounted to about $510,000.

But at the time of Graphite's payment application, the project was not yet completed. A punch list of the incomplete work hadn't even been created yet. So DMACC's architect declined to approve Graphite's request for payment.

Meanwhile, a dispute arose between Graphite and Metro Concrete, Inc. (Metro), a subcontractor that had provided concrete services for the project. Metro believed that Graphite owed over $212,000 for unpaid services. In late January, Metro served a claim "Under Provisions of Chapter 573 Iowa Code" against Graphite and DMACC. Then, in March, Graphite served a demand on Metro to file suit on its claim.[1] Metro obliged by filing the current suit, in which Metro seeks payment for its unpaid services. Metro named DMACC and Graphite as defendants. Both DMACC and Graphite answered.

---

[1]We do not find this demand in our record. But the parties appear to agree that the demand was made.

In July, Graphite filed a "Motion to Compel Defendant DMACC to Release Retainage."[2] In its motion, Graphite claimed that after Metro filed its suit, Graphite had filed a bond for twice the amount of Metro's claim. Therefore, Graphite contended, Iowa Code section 573.16 required DMACC to pay some or all of the remaining retainage to Graphite. Graphite also contended that because it was entitled to recover on its claim for retainage, it was also entitled to attorney fees under Iowa Code section 573.21.

DMACC resisted the motion. DMACC maintained that because the project was not yet completed, Graphite was not yet entitled to the requested retainage. DMACC also resisted Graphite's request for attorney fees.

The district court denied Graphite's requests. Relying on the plain language of section 573.16, the district court concluded that DMACC could not be obligated to release the retainage to Graphite prior to "final completion and acceptance of the project." So, because the project wasn't completed, the court rejected Graphite's retainage claim. The court also found that because Graphite had not prevailed on its retainage claim, Graphite could not be entitled to attorney fees. *See Star Equip., Ltd. v. State,* 843 N.W.2d 446, 464 (Iowa 2014) (limiting recovery of attorney fees under Iowa Code section 573.21 to "prevailing parties").

Then Graphite filed this appeal. In its appellate brief, Graphite argues that the district court was wrong to deny its claims to retainage and attorney fees. Graphite also requests appellate attorney fees.

---

[2]DMACC raises procedural concerns about this motion. DMACC suggests that because Graphite's motion sought an order compelling the payment of money, it should have been in the form of a motion for summary judgment or a motion for injunction. DMACC also contends that because Graphite filed no crossclaim, Graphite was in no position to obtain affirmative relief through a motion. Because we affirm the denial of Graphite's motion on other grounds, we need not decide whether these procedural issues would have also justified denial of the motion.

We transferred Graphite's appeal to the court of appeals. The court of appeals reversed and remanded for payment to Graphite from the retainage fund. But the court of appeals denied Graphite's requests for attorney fees. The court reasoned that section 573.21 only authorizes fee awards to subcontractors, not general contractors.

Then DMACC applied to this court for further review. We granted DMACC's application. We also accepted an amicus brief from organizations that represent public entities, namely, the Community Colleges of Iowa (not including DMACC), Iowa Association of School Boards, Iowa State Association of Counties, and Iowa League of Cities. These amici argue that the district court was correct in concluding that Graphite was not entitled to retainage because the project was not completed.

**II. Merits.**

We begin our analysis with an overview of chapter 573 and particularly its retainage features. We then explain why, in our view, the district court was right to deny Graphite's motion to compel payment of the retainage. After that we address Graphite's counterarguments. And then we briefly discuss the issue of attorney fees.

**A. Overview.** Chapter 573 helps ensure that public construction projects get completed and that contractors and subcontractors get paid. The statute works through two main mechanisms. First, chapter 573 requires general contractors to provide a performance bond to ensure "faithful performance of the contract" and "fulfillment of other requirements as provided by law." Iowa Code § 573.2(1); *see also id.* §§ 573.3 (bond mandatory), .4 (deposit in lieu of a surety on the bond), .5 (minimum amount of bond), .6 (required bond provisions). *See*

*generally Star Equip., Ltd.*, 843 N.W.2d at 452–53 (addressing the bond requirement).

Second, chapter 573 requires retainage procedures. These procedures start with monthly progress payments that public entities make to the general contractor. These payments are based on "estimates of labor performed and material delivered, as determined by the project architect." Iowa Code § 573.12(1)(*a*). But the public entity must retain up to 5% of the payable amount. *Id.* § 573.12(1)(*b*). These retained monies are called "retainage." The retainage "constitutes a fund for the payment of claims for materials furnished and labor performed" on the project. *Id.* § 573.13. The retainage fund must be "held and disposed of by the public [entity] as provided in" chapter 573. *Id.*

Disposition of the fund is the central topic of this suit. Chapter 573 is clear that, as a general matter, the fund must be "retained by" the public entity for no less than "thirty days after the completion and final acceptance of the improvement." *Id.* § 573.14(1). There are two narrow exceptions to this requirement, neither of which is applicable here.[3] And where, as here, those exceptions do not apply, retainage cannot be released before the project has been completed, the project has been finally accepted, *and then* an additional thirty days have passed. This makes sense because chapter 573 also provides that subcontractors may file claims against the retainage "[a]t any time before the expiration of thirty days immediately following the completion and final acceptance of the improvement." *Id.* § 573.10(1). *But see id.* §§ 573.10(2)

---

[3]Section 573.15A provides an option for early release "upon completion of ninety-five percent of the contract." Iowa Code § 573.15A. No one suggests that this option is relevant here.

Section 573.28 also provides a procedure for early release when a project is "substantially completed." Iowa Code § 573.28(2)(*a*). The procedure includes, among other things, a special notice to all subcontractors. *Id.* § 573.28(2)(*a*),(*f*),(*g*). As the court of appeals correctly concluded, though, "[t]hat option was not pursued here." So section 573.28 is not relevant to our analysis.

(allowing later claims in specified circumstances), .11 (same). If the retainage were released *before* this thirty-day period expired, the retainage wouldn't be available to cover valid subcontractor claims filed *within* the thirty-day period.

But suppose that, at the end of this thirty-day period, there are no claims on file with the public entity. In that case, the entire retainage fund must be paid to the contractor. *Id.* § 573.14(1). On the other hand, if there *are* claims on file at the end of the period, the public entity must continue to retain "a sum equal to double the total amount of all claims on file." *Id.* This ensures that there are sufficient contract funds available to resolve any outstanding claims.

Chapter 573 also contemplates a second thirty-day period. This is the period in which suits must be filed to obtain the remaining retainage. The period begins with "the expiration of thirty days . . . following the completion and final acceptance" of the project. *Id.* § 573.16(1). The period ends "sixty days" following the completion and final acceptance of the project. *Id.* We have said that these timing requirements, which are housed in section 573.16, create "a special statute of limitations" for suits against the retainage. *Nw. Limestone Co. v. Iowa Dep't of Transp.*, 499 N.W.2d 8, 11 (Iowa 1993) (quoting *Perkins Builders' Supply & Fuel Co. v. Indep. Sch. Dist.*, 221 N.W. 793, 795 (Iowa 1928)); *see also Emps. Mut. Cas. Co. v. City of Marion*, 577 N.W.2d 657, 658 (Iowa 1998) ("Section 573.16 requires subcontractors to bring suit on their filed claims not later than sixty days after completion and final acceptance of the improvement."); *Biermann Elec. v. Larson & Larson Const., LLC*, No. 13–0467, 2014 WL 69672, at *2 (Iowa Ct. App. Jan. 9, 2014) ("Section 573.16 establishes a strict time frame for bringing such an action. The section provides that such an action can only be brought after the expiration of thirty days, but not later than sixty days, *following the completion and final acceptance of the project.*" (citation omitted)).

Section 573.16 permits the public entity, the general contractor, or "any claimant for labor or material who has filed a claim" to initiate suit during this thirty-day period. Iowa Code § 573.16(1). Section 573.16 also permits the contractor to demand that a claimant file suit. *Id.* § 573.16(2). If the claimant fails to do so within thirty days, then "the retained and unpaid funds due the contractor shall be released." *Id.* But if, instead, the claimant responds to the demand by commencing an action, then the general contractor may file "a surety bond in double the amount of the claim[s] in controversy, conditioned to pay any final judgment rendered for the claims so filed." *Id.* Once this bond is filed, the public entity "shall pay to the contractor the amount of funds withheld." *Id.*

Regardless of how litigation begins, all outstanding claims should be resolved in a single action. This single-action requirement is reflected in the text of section 573.16, which requires the court to "adjudicate all rights" to the retainage. *Id.* § 573.16(1). It is also reflected in section 573.18, which requires the court to "adjudicate all claims for which an action is filed under section 573.16," and specifies the order in which they should be paid. *Id.* § 573.18(1); *see also id.* § 573.11 ("The court may permit claims to be filed with it during the pendency of the action hereinafter authorized, if . . . such belated filing will not materially delay the action."). This orderly resolution can occur only if all outstanding claims are before the court at once.

**B. Application.** With this overview in mind, we now turn to the dispute before us. Graphite contends that even though the project is not completed, much less finally accepted, DMACC is obligated to release the retainage to Graphite because three things have occurred: Graphite served a demand for suit upon subcontractor Metro, then Metro responded by commencing an action, and then Graphite filed a surety bond in twice the amount of Metro's claim. Graphite

bases this argument on certain language in the second paragraph of section 573.16. Here is the text of section 573.16. The language that Graphite relies on is in italics.

> 1. The public corporation, the principal contractor, any claimant for labor or material who has filed a claim, or the surety on any bond given for the performance of the contract, may, at any time after the expiration of thirty days, and not later than sixty days, following the completion and final acceptance of said improvement, bring action in equity in the county where the improvement is located to adjudicate all rights to said [retainage] fund, or to enforce liability on said bond.

> 2. *Upon written demand of the contractor served, in the manner prescribed for original notices, on the person filing a claim, requiring the claimant to commence action in court to enforce the claim, an action shall be commenced within thirty days, otherwise the retained and unpaid funds due the contractor shall be released. . . . After an action is commenced, upon the general contractor filing with the public corporation or person withholding the funds, a surety bond in double the amount of the claim in controversy, conditioned to pay any final judgment rendered for the claims so filed, the public corporation or person shall pay to the contractor the amount of funds withheld.*

*Id.* § 573.16 (emphasis added).

We disagree with Graphite's argument. Like the district court, we think Graphite takes the italicized language out of context. As explained, other provisions of chapter 573 make it clear that the retainage cannot be released before thirty days after the completion and final acceptance of the project. *See, e.g., id.* §§ 573.10(1), .14(1). Also, chapter 573's timing requirements for lawsuits, which appear in the first paragraph of section 573.16, prohibit lawsuits to obtain the retainage from being filed until "after the expiration of thirty days . . . following the completion and final acceptance." *Id.* § 573.16(1). It follows that Graphite cannot use a *post*-lawsuit-bonding-off process to obtain the retainage *now*, that is, *prior to* completion and final acceptance of DMACC's

project. Therefore, the district court was correct to deny Graphite's motion to compel immediate release of the retainage.

**C. Counterarguments.** We have considered all of Graphite's counterarguments. We believe three of them should be discussed here: (1) Graphite's theory that section 573.16's subsections operate independently of one another, (2) Graphite's suggestion that chapters 573 and 572 must operate alike, and (3) Graphite's argument that our interpretation fails to give effect to statutory language.

1. *Unity of section 573.16.* We start with Graphite's theory about the text of section 573.16. As shown above, section 573.16 consists of two subsections, numbered as (1) and (2). *Id.* § 573.16(1), (2). In Graphite's view, these two subsections operate independently from one another. And so section 573.16's timing requirements for lawsuits, which appear in subsection (1), have no application to section 573.16's post-lawsuit-bonding-off procedures, which appear in subsection (2). *See id.*

We disagree. When reading statutes, "we seek to determine the ordinary and fair meaning" of the legislature's chosen language. *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). We think the most fair and natural reading of section 573.16 is to read it as an interrelated whole. And so section 573.16's lawsuit-timing requirements govern all of the lawsuits described in section 573.16, including lawsuits that must precede bonding off by the contractor.

This view is consistent with the legislature's own approach to section 573.16. Throughout chapter 573, the legislature repeatedly refers to section "573.16" as a whole. Iowa Code §§ 573.14(2) ("573.16"), .15A(3) ("The action shall be brought in accordance with sections 573.16 through

573.18 . . . ."), .18 ("The court shall adjudicate all claims for which an action is filed under section 573.16."). Nowhere in chapter 573—nowhere in the Code—does the legislature refer to only one of section 573.16's subsections or the other. *See, e.g., id.* § 384.58(4) ("Nothing contained in this subsection shall abridge any of the rights set forth in section 573.16."). And nowhere does the legislature refer to bonding off under subsection (2) as a procedure that is independent from the limitations of subsection (1).

We also bear in mind that when the legislature wants subsections to operate independently, the legislature knows how to say so. Indeed, in other parts of chapter 573, the legislature makes it clear that *some* subsections can act independently. For instance, section 573.14 consists of two numbered subsections, (1) and (2). Subsection (2) states that "*this subsection* does not abridge any of the rights set forth in section 573.16." *Id.* § 573.14(2) (emphasis added). But subsection (1) contains no similar language. *See id.* § 573.14(1). The natural inference, amici note, is that subsection (1) *can* limit the operation of 573.16. Specifically, the operation of section 573.16 is limited by subsection 573.14(1)'s command that the retainage "shall be retained by the public corporation for a period of thirty days after the completion and final acceptance of the improvement." *Id.*

This leads to a larger point about section 573.16: reading that section as a whole is consistent with the overall structure and function of chapter 573. Reading 573.16 as a whole means that neither a lawsuit over distribution of the retainage—nor the contractor's post-lawsuit bonding off—can occur until after the project is complete, the project is finally accepted, and the subcontractors have a thirty-day post-acceptance opportunity to submit claims. This fits with the remainder of chapter 573, which, as explained, generally requires the

retainage to be retained until after the project is complete, the project is finally accepted, and the subcontractors have a thirty-day post-acceptance opportunity to submit claims.

We note also that if, as Graphite suggests, a contractor could demand a lawsuit and then bond off every time a subcontractor brings a claim, then there could be a multitude of lawsuits throughout the course of a construction project. This is not consistent with chapter 573's direction that the court adjudicate all claims in a single action. *See id.* §§ 573.16(1), .18(1).

2. *Chapter 573 versus chapter 572.* Next we address Graphite's analogy between Iowa Code chapters 572 and 573. Graphite observes that chapter 572, which governs mechanic's liens on private construction projects, has similarities to chapter 573, which governs public construction projects (to which liens cannot attach). For instance, just as section 573.16 allows contractors to obtain retainage by filing a bond, section 572.15 permits private property owners to discharge liens by filing a bond. *Compare id.* § 573.16(2), *with id.* § 572.15. And, under chapter 572, the bonding-off tool is available to property owners prior to completion of the project. *Id.* § 572.15. It must follow, Graphite argues, that chapter 573 allows general contractors to bond off prior to completion of the project.

We disagree. To be sure, we have noted similarities between chapters 572 and 573. *See Farmers Coop. Co. v. DeCoster*, 528 N.W.2d 536, 537–38 (Iowa 1995) (per curium). But we have not said—and we could not say—that courts may ignore textual differences between the two chapters. Rather, courts must give effect to those differences. And those differences are dispositive here. On one hand, it appears that nothing in the text of chapter 572 requires property owners to wait until completion of the project before bonding off liens. Indeed,

section 572.15 expressly permits bonding off "at any time." Iowa Code § 572.15. But chapter 573 does not include that language. Chapter 573 does not permit bonding off "at any time." Rather, as explained, chapter 573 imposes specific time limits on when the contractor may obtain retainage by filing a bond. Important here, chapter 573 makes it clear that Graphite can't bond off now, before the construction project is even completed.

3. *Surplusage?* Finally, we address Graphite's concern that our interpretation would leave section 573.16's bonding-off language without practical effect, as mere surplusage. *See generally State v. Rhodes,* 6 N.W.3d 741, 750–52 (Iowa 2024) (discussing surplusage). By this, Graphite seems to mean that if the contractor cannot obtain the retainage by bonding off prior to completion of the project, then bonding off carries no benefit for the contractor.

We disagree. Suppose that after the completion and acceptance of a project, there is litigation over the retainage. That litigation will take time. And during that time, the contractor will not have access to the retainage funds *unless* the contractor files the bond permitted by section 573.16. Conversely, if the post-litigation bond *is* filed, then the contractor *will* have access to retainage funds, which it may use as it wishes.

So section 573.16's bonding process plainly does hold value for contractors even though—as we hold here—contractors cannot use it prior to completion and final acceptance. That limited benefit is still a benefit. And because the bonding language in section 573.16 can provide a benefit, it is not surplusage.

**D. Attorney Fees.** For the reasons explained above, we conclude that Graphite should not prevail on its claim to recover the retainage. Because Graphite is not a prevailing party, Graphite is not entitled to attorney fees under

Iowa Code section 573.21. *See Star Equip., Ltd.*, 843 N.W.2d at 464 (limiting recovery of attorney fees under section 573.21 to "prevailing parties").

We conclude, therefore, that the district court was right to deny Graphite's claim for attorney fees. Likewise, the court of appeals was right to reject Graphite's claims for fees from the district court action and for appellate fees. Because we reject Graphite's fee claims on prevailing-party grounds, we need not address the alternative theory that the court of appeals relied upon, that is, the theory that general contractors are categorically precluded from obtaining attorney fees under section 573.21. We save that question for another day.

**III. Disposition.**

The district court was correct to deny Graphite's motion to compel payment of the retainage. As to this issue, the court of appeals erred in reversing the district court.

As to attorney fees, the district court and the court of appeals were both correct to reject Graphite's claims.

**Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**